OPINION
Wal Mart Stores, Inc. appeals from a judgment entered on a jury verdict in the Logan County Court of Common Pleas in favor of Mary Rutter on her complaint claiming a right to participate in the workers' compensation system.
On August 31, 1994, Mary Rutter injured her left knee during the course of her employment with Wal Mart at its store in Bellefontaine, Ohio. Rutter sought medical attention for this injury and was diagnosed with "internal derangement" of the left knee. In November of 1994, Rutter had an arthroscopic surgery performed on that knee. Shortly after her surgery, Rutter began to feel discomfort in her right knee joint. On March 7, 1995, Rutter's treating physician, Dr. Anderson, first noticed that Rutter was having difficulty with her right knee. On August 20, 1997, the Ohio Industrial Commission allowed Rutter to participate in the workers' compensation system for injuries to both her left and right knees.
On October 3, 1997, Wal Mart appealed the decision of the commission to the Logan County Court of Common Pleas. On October 17, 1997, Rutter filed a complaint in that court claiming a right to participate in the workers' compensation fund for "aggravation of degenerative arthritis of both knees." On October 9, 1998, a jury returned a verdict in favor of Rutter and the trial court entered judgment accordingly on November 5, 1998. Wal Mart, a self-insured employer, appeals from this judgment and raises one assignment of error.
 I.
Wal Mart's sole assignment of error states:
 The trial court erred in failing to direct a verdict in favor of Wal Mart on the issue of plaintiff's right to participate in the workers' compensation fund for aggravation of pre-existing arthritis in her right knee.
A directed verdict will only be granted when
 * * * the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party. * * *.
Civ. R. 50(A)(4). The Ohio Supreme Court has noted that "in addition to Civ. R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion." Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119, 671 N.E.2d 252, 255, citation omitted. Accordingly, "if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." Clark v. Southview Hosp. Family (l994), 68 Ohio St.3d 435,438, 628 N.E.2d 46, 48; quoting Hawkins v. Ivy (1977),50 Ohio St.2d 114, 363 N.E.2d 367; see also, Laderer v. St. Rita's Medical Center (1997), 122 Ohio App.3d 587, 702 N.E.2d 476.
Wal Mart contends that because Rutter did not injure her right knee while working at Wal Mart she cannot claim benefits for such injury under the workers' compensation statute, citing R.C. §4123.01(C). Revised Code § 4123.01(C) provides that injuries covered under the workers' compensation system shall be those injuries "received in the course of, and arising out of, the injured employee's employment." However, the Industrial Commission "has continuing jurisdiction . . . to award compensation or benefits for a loss or impairment of bodily functions developing in a part or parts of the body not specified [in the original notice of injury]" if the subsequent development is "due to and a result of or a residual of the injury to one of the parts of the body set forth in the written notice [that describes a covered injury]. R.C. § 4123.84(C) (emphasis added); see also, Iiams v. Corporate Support, Inc. (1994), 98 Ohio App.3d 477,479, 648 N.E.2d 902, 903 (holding, however, that the claimed residual injury is properly denied where it is caused by an unforeseeable act of a third party).
Here, Wal Mart does not contend that Rutter's claimed residual injury to her right knee should be barred because of an intervening unforeseeable act of a third party. Rather, Wal Mart argues that Rutter's claimed residual injury should be denied because it developed from a pre-existing condition in a body part not injured during a work related incident. First, "an injury, for workers' compensation purposes, includes an aggravation of a pre-existing condition." Hoops v. Mayfield (1990), 69 Ohio App.3d 604,606, 591 N.E.2d 323, 325; State ex rel. Chrysler Corp. v. Industrial Com'n of Ohio (1998), 81 Ohio St.3d 158, 167,689 N.E.2d 951, 958 (holding that an asymptotic arthritic condition in the knees, if aggravated by work related incident to become symptomatic, is a compensable injury under the Workers' Compensation Statute). Further, residual or flow through injuries, by definition, are those injuries "developing in a part or parts of the body not specified" in the original notice of injury. R.C. § 4123.84(C). Wal Mart concedes that Rutter did not complain of pain or disability in her right knee until after her surgery on her left knee. (Wal Mart brief p. 10). Therefore, Rutter's pre-existing asymptotic arthritic condition is insufficient to bar her participation claim if the injury to right knee injury is "due to and a result of or a residual of" the undisputed work related injury to her left knee injury. R.C. §4123.84(C).
The statute simply does not limit, as Wal Mart contends, residual injuries to only those body parts claimed to have been injured in the original notice of claimed injury. "[I]f [a claimant] could show that her 'new' injury occurred because of the allowed injury which did arise out of an employment situation . . . the new injury [could] be considered to have occurred on a 'flow through' basis." Iiams, supra at 480. Accordingly, Wal Mart's first argument is without merit.
Wal Mart also contends in support of its assignment of error that Rutter presented insufficient expert testimony as to whether the residual injury to Rutter's right knee was proximately caused by her work-related injury to her left knee. Wal Mart does not dispute that there was sufficient evidence of a work-related injury to Rutter's left knee.
Rutter's treating physician, Dr. Anderson, testified by video deposition. Dr. Anderson stated that in his opinion, based on a reasonable degree of medical certainty, Rutter's "pain and disability" in her right knee was proximately caused by the August 31, 1994 injury to her left knee suffered while working at Wal Mart. (Depo Tr. p. 19). Dr. Anderson explained that his opinion was based two factors: 1) Rutter's statement to him that she did not begin to feel discomfort in her right knee until after her left knee surgery; and 2) his physical examination of her knees. (Depo Tr. p. 20). Doctor Anderson explained Rutter placed more stress on her right knee after surgery to left knee and "probably caused an aggravation of her degenerative knee condition." Id.
Wal Mart notes, however that Dr. Anderson stated on cross-examination that he would have expected Rutter's arthritic condition in her right knee to worsen regardless of the trauma she suffered with her left knee. (Depo Tr. p. 56). Further, Dr. Anderson, responded that there was no way, "medically and clinically speaking . . . to tell the difference between arthritis getting worse and arthritis getting worse because something else happens." Id. (emphasis added). Dr. Anderson also responded "No" to the question of whether there was any way "medically or scientifically" he could "distinguish between the worsening of the right knee from the ongoing degenerative arthritis as opposed to any additional stress that the knee may have had on it because of the difficulty with the left knee." (Depo Tr. p. 57) (emphasis added).
Wal Mart contends that Dr. Anderson's opinion was contradictory and therefore not competent evidence of what caused Rutter's right knee injury. Wal Mart, argues therefore, that without evidence as to causation a directed verdict should have been granted in its favor. However, when the testimony of Dr. Anderson on cross-examination is viewed in its context, it is clear that the doctor did not give an inconsistent or contradictory opinion. As noted, on direct examination, Dr. Anderson stated he based his opinion on both information Rutter told him and information he learned from his physical exam of her right knee. Doctor Anderson repeated this explanation on cross-examination when asked:
 Q. And so we're clear on this matter, the diagnosis that you reached was entirely based upon what Ms. Rutter told you?
 A. It's based on both history and physical examination. * * * I try to have a historical data and objective data together to come up with a diagnosis, so I need both of those. If I don't have some sort of objective information, I can't arrive at a specific diagnosis.
(Depo Tr. p. 49). Thereafter, Dr. Anderson was asked to separate the information learned from his interview with Rutter from the information obtained from his physical examination of her.
 Q. Okay. Is there a way for you clinically, that is, by your examination, to tell the difference between someone who has pain from arthritis and someone who has pain from an internal derangement?
A. It can be very difficult to sort that out.
 (Depo Tr. p. 50). It was under this context that Wal Mart asked Dr. Anderson whether there was any way "medically and clinically" speaking to determine the likely cause of Rutter's claimed injury. (Depo Tr. p. 56, 57). Doctor Anderson's negative response to this qualified question was consistent with his earlier testimony where he noted that his opinion is "based on both history and physical examination. * * * I try to have a historical data and objective data together to come up with a diagnosis." (Depo Tr. p. 49). "Artful cross-examination" notwithstanding, Dr. Anderson's responses to Wal Mart's questions do not indicate the doctor gave two mutually exclusive alternative opinions. State ex rel. Chrysler Corp., 81 Ohio St.3d 158, 166, 689 N.E.2d 951, 957, quoting, State ex rel. Owens-Corning Fiberglas Corp. v. Insdus. Comm. (1994), 70 Ohio St.3d 263, 266, 638 N.E.2d 565, 567 (Douglas, J., dissenting). Therefore, Dr. Anderson's testimony was competent evidence of the cause of Rutter's claimed residual injury to her right knee.
Furthermore, even if Dr. Anderson's testimony could be viewed as ambiguous, Dr. Anderson stated on re-direct that nothing he stated on cross-examination caused him to lose confidence in his medical opinion given earlier in the deposition. Doctor Anderson stated that his opinion remained that Rutter's work-related injury to her left knee proximately caused her claimed injury to her right knee. (Depo Tr. p. 62). This testimony was sufficient to clarify any perceived ambiguity. State ex rel. Chrysler Corp.,81 Ohio St.3d 158, 166, 689 N.E.2d 951, 957; State ex rel. Eberhardt v. Flxible (1994), 70 Ohio St.3d 649, 640 N.E.2d 815.
The opinion testimony of Dr. Anderson was competent evidence of the cause of Rutter's claimed injury to her right knee. Accordingly, the jury was entitled to hear and believe his opinion. Because Dr. Anderson's testimony was sufficient to cause reasonable minds to disagree on the determinative issue of proximate cause, the trial court properly denied Wal Mart's motion for a directed verdict. Civ. R. 50(A)(4).
Wal Mart's assignment of error is overruled.
Judgment affirmed.
HADLEY and SHAW, JJ., concur.